UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASSEMBLY SQUARE LIMITED PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>KMART CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 04CV10093(EFH)<br>)<br>)<br>)<br>)<br>)<br>) |

**AFFIDAVIT OF PATRICIA BRISKEY
IN SUPPORT OF KMART'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

I, Patricia Briskey, being first duly sworn, deposes and says:

1. I hold the position of Manager, Real Estate Property Administration at Kmart Corporation ("Kmart"). I make this affidavit in support of Kmart's motion for partial summary judgment on Plaintiff's summary process claim for possession based upon my personal knowledge of the facts in dispute in this action and based upon my review of documents.

2. Attached as Exhibit 1 is a true and correct copy of the 1999 Common Area Maintenance Charge Reconciliation ("1999 CAM Reconciliation") received by Kmart on March 8, 2001, with handwritten notes of Kmart Lease Administrator Joyce DiFalco. The 1999 CAM Reconciliation included one hundred eighty three (183) pages of supporting documentation (PLTF 0668 - PLTF 0851)

3. Assembly Square Limited Partnership or its agents (" Landlord") in the 1999 CAM Reconciliation initially treated as an expense allocable to Kmart an insurance premium in the amount of $11,364.00 (PLTF 0668).

1

4. The 1999 CAM Reconciliation included as supporting documentation for Kmart's review only one insurance premium invoice (PLTF 0851 in the attached Exhibit 1) which described the coverage as the "Commercial Package" for Assembly Square Mall for the policy period 1/1/99 to 1/1/00. The total invoice amount of $11,364.00 corresponded to the total amount treated as Common Area Maintenance expenses ("CAM") allocable to Kmart, as shown on PLTF 0668 in Exhibit 1. Kmart was never presented with a CAM Reconciliation for 1999 in which the cost of property insurance for only the outside common area was included in the expenses allocable to Kmart.

5. In the 1999 CAM Reconciliation Landlord initially treated as an expense allocable to Kmart the property manager's salary in the amount of $19,687.75.

6. The 1999 CAM Reconciliation included only one page of supporting documentation with regard to the property manager expense for Kmart's review. This page, entitled Wage & Benefits Allocation of Maintenance Personnel 1999 (PLTF 0850 of Exhibit 1) showed that Landlord had included 25% of "Maintenance Personnel" salary and benefits and had calculated that amount to be $19,687.75 – the amount listed as Property Manager salary in the expenses allocable to Kmart on the 1999 CAM Summary spreadsheet (PLTF 0668 of Exhibit 1).

7. It had not been the practice of Landlord's predecessor-in-interest or Landlord, to include any amount for insurance in the expenses allocable to Kmart in the CAM Reconciliations. Exhibits 2 through 5 are true and correct copies of the summaries of the 1994 to 1998 CAM Reconciliations, with the relevant supporting documentation included therewith in some instances. There is no insurance line item in the summary of expenses allocable to Kmart, as shown on the first page of each of Exhibits 2 through 5 ( KCCQ 00515, Exhibit 2; KCCQ 00516, Exhibit 3; KCCQ 00518, Exhibit 4; KCCQ 00561, Exhibit 5).

8. It had not been the practice of Landlord's predecessor-in-interest or Landlord, to include any amount for the property manager's salary in the expenses allocable to Kmart in the 1994 – 1998 CAM Reconciliations. Exhibit 5 contains a cover letter itemizing the costs billed to Kmart and contains further supporting documentation including the entire Schedule of Common Area Costs to Landlord for Calendar Year 1998 (KCCQ 00569 – 00572). When the Landlord assumed the property, under the administration of National Development, in October 1998, the Schedule of Common Expenses shows clearly that the Landlord continued the prior practice of separating Maintenance Payroll from the Property Manager Payroll (KCCQ 00570). A portion of Maintenance Payroll was allocated to the outside (exterior) common area (KCCQ 00570) and then to Kmart (KCCQ 00561). No portion of the Property Manager Payroll was transferred to the summary of expenses allocable as CAM to Kmart (KCCQ 00561).

9. Based upon the express terms of the Lease, Kmart understood that it was not responsible for any portion of an insurance premium not allocated to coverage for property in the outdoor common area.

10. Based on the express terms of the Lease, Kmart understood that it was not responsible for any portion of the property manager's salary because Kmart understood that the property manager's functions were both office overhead functions and functions that extended beyond the care of the Assembly Square Mall outdoor common area.

11. Attached as Exhibit 6 is a true and correct unsigned copy of a letter dated April 24, 2001 from Joyce DiFalco, Kmart Lease Administrator, to the attention of Malcolm Baker, notifying Landlord that Kmart disputed the 1999 CAM Reconciliation insurance expense of $11,364.00 and the property manager expense of $19,687.75. Kmart recalculated the CAM

Reconciliation based upon these disputed items and determined that it was owed a credit of $9,320.16, by Landlord.

12. Attached as Exhibit 7 is a true and correct copy of Landlord's agreement dated March 22, 2002 to revise the 1999 CAM Reconciliation to reflect a credit to Kmart of $9,320.16. In this letter, Malcolm Baker on behalf of the Landlord admitted that it was an error to include the insurance premium amount and property manager's salary amount in the initial 1999 CAM Reconciliation, and, in fact, in all CAM Reconciliations.

13. Attached as Exhibit 8 is a true and correct copy of the initial 2000 CAM Reconciliation. The 2000 CAM Reconciliation included one hundred eighteen (118) pages of supporting documentation (PLTF 0863 - PLTF 0981).

14. Like the initial 1999 CAM Reconciliation, but unlike the CAM Reconciliations for prior years, Landlord's initial 2000 CAM Reconciliation treated as an expense allocable to Kmart, the insurance premium of $11,062.00 and an amount for the property manager's salary of $11,130.46.

15. The 2000 CAM Reconciliation included as supporting documentation for Kmart's review only one insurance premium invoice (PLTF 098 of Exhibit 8), which described the coverage as the "Commercial Package" for Assembly Square Mall for the policy period 1/1/00 to 1/1/01. The total invoice of $11,062.00 corresponded to the total amount treated as an expense allocable to Kmart. (PLTF 0863 of Exhibit 8). Kmart was never presented with a CAM Reconciliation for 2000 in which the cost of property insurance for only the outside common area was included in the expenses allocable to Kmart.

16. The 2000 CAM Reconciliation included as supporting documentation for Kmart's review only one page entitled Wage & Benefits Allocation of Maintenance Personnel 2000

(PLTF 0980 of Exhibit 8), showing that Landlord had included 25% of 52% (or 13%) of "Maintenance Personnel" salary and benefits and had calculated that amount to be $11,130.46 – the amount listed as Property Manager salary and treated as allocable to Kmart on the 2000 CAM Summary spreadsheet (PLTF 0863 of Exhibit 8).

17. Attached as Exhibit 9 is a true and correct unsigned copy of a letter dated September 27, 2001, from Joyce DiFalco, Kmart Lease Administrator, to the attention of Malcolm Baker, Property Manager, notifying Landlord that Kmart disputed the insurance expense of $11,062.00 and the property manager's salary expense of $11,130.46. Based upon this and other disputed items, Kmart recalculated the CAM Reconciliation and determined that it was owed a credit of $30,153.66 by Landlord for 2000 and a continuing credit of $9,230.16 for 1999.

18. By way of Malcolm Baker's letter dated March 22, 2002, attached hereto as Exhibit 7, Kmart received a revised 2000 CAM Reconciliation excluding insurance and the salary of the property manager in accordance with Kmart's understanding. Mr. Baker agreed with Kmart on the exemption of insurance among other items and calculated a revised credit due Kmart for 2000 CAM charges of $29,987.29. Though this amount differed slightly from Kmart's revised calculation of $30,153.66 referenced in the foregoing paragraph, Kmart does not dispute Mr. Baker's re-calculation of a $29,987.29 revised credit.

19. By way of Malcolm Baker's same March 22, 2002 letter, attached hereto as Exhibit 7, Kmart received a revised 2001 CAM Reconciliation (PLTF 0006 – 0009 of Exhibit 7) excluding the insurance expense allocation and the property manager salary allocation, thereby resulting in Mr. Baker's calculation of a credit due Kmart of $14,941.09 based upon Mr. Baker's

5

calculation of the CAM escrow payments already made by Kmart. This was the first and only 2001 CAM Reconciliation received by Kmart prior to the commencement of litigation.

20. Kmart does not dispute Mr. Baker's method of calculating the credit due Kmart for the 2001 CAM charges; however, in the backup showing the 2001 CAM Payments (PLTF 0006 of Exhibit 7) Mr. Baker assumed that Kmart ceased paying at the escrow rate of $3,954.70 monthly by August of 2001, which was inaccurate as discussed in the succeeding paragraph.

21. In fact, Kmart made escrow payments of $3,954.70 through November of 2001. Attached hereto as Exhibit 10 is a true and correct accounting statement of Kmart's payments and the associated check numbers. The total Kmart CAM escrow payments paid to Landlord for 2001 added to $43,501.70. This amount should be reflected in the column in the 2001 CAM Reconciliation (PLTF 007 of Exhibit 7) to yield a credit due Kmart for 2001 of $19,254.89.

22. Therefore, the total aggregate credit to which Kmart was entitled for 1999, 2000 and 2001 was $58,472.34 – the sum of $9,230.16 for 1999 plus $29,987.29 (both in Exhibit 7) plus the $19,254.89 that should have been reflected in Exhibit 7 for 2001.

23. On December 1, 2001, Kmart began withholding CAM monthly escrow payments to amortize the large CAM credit on Kmart's books.

24. As of the date that Landlord sent Kmart the initial 2000 CAM Reconciliation, July 26, 2001, and apart from the aforementioned issues of the allocation of insurance expense and property manager's salary, Landlord calculated that Kmart was due a credit of $ 30,013.80 (PLTF 0860 of Exhibit 8). Despite the claim in the cover letter to the initial CAM Reconciliation (PLTF 0860 of Exhibit 8) that Landlord was sending a check for that amount to Kmart, it is undisputed that Landlord never sent that check. Rather, that credit remained on Landlord's books. Landlord amortized that credit by allocating CAM payments from December 2001 when

Kmart ceased making those payments to that credit until it was "spent" which, by Landlord's calculations occurred in December 2002. A portion of the December 2002 CAM escrow payment was included in the Delinquency Schedule attached to the notice of termination referenced below.

25. Landlord never amortized the remainder of the credit due Kmart in accordance with Landlord's March 22, 2002 admission by Malcolm Baker. The remainder of that credit - $58,472.34 less $30,013.80 reported in Mr. Baker's July 21, 2001 letter (Exhibit 8) and $391.31 reported in the 1999 CAM Reconciliation (Exhibit 1) – amounted to $28,067.23. At no point did Kmart ever receive credit for this amount.

26. Attached as Exhibit 11 is a true and correct copy of the 2002 CAM Reconciliation, sent to Kmart on June 6, 2003. Unlike previous CAM reconciliations where some attempt was made to provide Kmart with supporting documentation, Kmart was provided with no supporting documentation with the 2002 CAM Reconciliation.

27. Kmart was unable to determine the source of or verify the accuracy of the allocation to Kmart of any of the amounts listed in the 2002 CAM Reconciliation.

28. Attached hereto as Exhibit 12 is a true and correct copy of an August 12, 2003 letter from Anne O'Neill, a Lease Administrator for Kmart, to Michelle Campagna, Landlord's property manager, requesting that backup documentation be provided for the proposed 2002 CAM Reconciliation.

29. Attached hereto as Exhibit 13 is a true and correct copy of an April 28, 2003 letter from Landlord notifying Kmart that the Landlord was adjusting the monthly CAM escrow amount for 2003 from $2,669 to $4678.58, retroactive to January 1, 2003. Landlord did not

provide any reason for the increase or any supporting documentation. Kmart was unable to verify the need for the CAM increase.

30. In her letter of August 12, 2003, attached hereto as Exhibit 12, Anne O'Neill indicated that Kmart had received the Landlord's letter requesting an increase to the monthly CAM escrows. O'Neill requested supporting documentation to explain the increase.

31. Attached hereto as Exhibit 14 is a true and correct copy of an August 8, 2003 letter sent by Alvin Nathanson, Esq., attorney for Landlord, ("Nathanson") to the attention of Daryl Hurley, an employee in the Accounting Department at Kmart. Daryl Hurley previously had not been the Landlord's contact at Kmart with regard to resolving the various CAM charges disputed in this action. Those discussions had been conducted with various employees of Kmart's Real Estate Lease Administration Department but, to the best of my knowledge, no employee in that Department received the purported notice of default until it was internally routed weeks later.

32. Attached hereto as Exhibit 15 is a true and correct copy of an August 22, 2003 letter sent by Nathanson to O'Neill denying Kmart's request for documentation supporting the 2002 CAM Reconciliation and the dramatic increase in escrow payments billed by Landlord for 2003.

33. Between August 29, 2003 and September 15, 2003, Tracy Price of Kmart communicated with Landlord's agents in an attempt to obtain additional detail and to resolve the dispute over the amount Landlord claimed Kmart owed. Attached hereto as Exhibit 16 are Tracy Price's handwritten notes regarding those communications. The notes show that Tracy Price requested supporting documentation for the 2002 CAM Reconciliation balance that Landlord believed Kmart owed and that was included in the notice of default. She first contacted Landlord

on August 29, 2003 (KCCQ 00340). She received supporting documentation on September 4, 2003 via facsimile (KCCQ 00349).

34. On September 19, 2003, Kmart paid $42,107.22 to Landlord by way of a "cure" payment for all of the escrow payments from January 2003 through August 2003 claimed due and owing in the notice of default despite Kmart's continued dispute regarding those amounts. A copy of the check and the letter from James Bastien, Esq. to Nathanson explaining the payment and enclosing the check are attached hereto as Exhibit 17.

35. On September 16, 2003, Nathanson sent via certified mail a letter to Kmart to Daryl Hurley's attention purporting to be a notice of termination of lease. A true and correct copy of that letter is attached hereto as Exhibit 18.

36. To the best of my knowledge and belief, Nathanson did not copy on that letter either Anne O'Neill or Tracy Price or any other Kmart employees with whom Landlord's agents had been communicating to resolve the dispute over CAM charges.

I declare under penalty of perjury that the foregoing is true and correct.

*Patricia Briskey*
Patricia Briskey
Manager, Real Estate Property Administration
Kmart Corporation

Dated: July __, 2004

9